IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-_____

Double Barrel Reality Investments, LLC,
A Colorado Limited Liability Company,

      Plaintiffs,

v.

SPECTRUMS U.S.A., an Unregistered California entity or D/B/A;
CHRISTOPHE BRAYER, individually; &
CB2O, LLC., a California Limited Liability Company,

      Defendants.
_____/
_____

## COMPLAINT FOR DAMAGES
_____

      Plaintiff, **Double Barrel Reality Investments, LLC, ("DB")** a Colorado Limited Liability Company, HEREBY sues and submits this Complaint against the **Defendants, SPECTRUMS U.S.A.**, ("Spectrums"), an unregistered California entity, **CHRISTOPHE BRAYER**, individually and in his capacity with Spectrum U.S.A., & **CB2O, LLC.**, a California Limited Liability Company, [Defendants collectively shall be referred to as "Defendants"], as follows:

## PARTIES

      1.    Plaintiff, **Double Barrel Reality Investments, LLC, ("DB"),** a Colorado Limited Liability Company, with its principle offices located at 6411 S. Jamaica Circle, Englewood, Colorado 80111 and is sui juris. DB has two members within the LLC, as follows:

            a.  Craig Brand a citizen and resident of Englewood, Colorado, Arapahoe County; and,

1

      b. Mandon Bossi, an Australian citizen and resident of the State of Utah.

2. Defendant, **SPECTRUMS U.S.A.**, ("Spectrums USA") has been represented by Defendant Christophe Brayer as an unregistered California entity that acts as a U.S. counter-part or associate to what he calls the parent company, i.e., Spectrums Europe, SAS, a French corporate entity located in Paris, France. Defendant Brayer has described Spectrum USA as the US sales arm for Spectrums Europe and not a true corporate entity but rather an alter ego of himself and that of the European Counter-Part (Spectrums EU), that Defendant Brayer also holds himself out as being the majority owner.

3. Defendant **Brayer** is a French citizen, residing in the State of California and living in Beverly Hills, Los Angles. At all times material hereto, Defendant Brayer has represented himself as the President and majority owner of Spectrums EU and Defendant CB2O, LLC. Defendant Brayer has represented himself as the only individual involved within the so-called Spectrums USA.

4. Defendant **CB2O, LLC**., ("CB2O), is an active Delaware limited liability company registered with the Secretary of State of Delaware and whose principal place of business is located at 5670 Wilshire Blvd., Suite 1802, Los Angeles, CA. 90036. CB2O's Managing Member is Christophe Brayer who is permanently domiciled in the State of California, a French citizen and CB2O's two other members reside and are permanently domiciled in the Country of France. These two other French members are: Olivier Garcon and Olivier Chauve; both of whom permanently reside in the Country of France.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 over the subject matter presented in this Complaint because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and, as set forth below, diversity of citizenship exists as authorized by 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(c).

6. The Defendants have transacted business in Colorado, the property involved (see, Property description in Exhibits "A" & "B"), was taken from the State of Colorado and needs to be returned to the State of Colorado, and the Defendants engaged in a substantial part of the tortious actions and events, complained of herein, giving rise to this action in the State of Colorado, including the torts and breaches, complained of herein, against the Defendants. Additionally, the purchase orders were created in Colorado, the Defendants wire transferred monies, on several occasions, into Chase Bank in Centennial, Colorado, and the Defendants communicated with the Plaintiff by telephone, email, text, and digital applications into Colorado as well as having sent representatives to the site location to inspect, agree to, and receive the property set forth on the Exhibits ("A" & "B", attached hereto).

7. Venue is proper in this Court pursuant to 15 U.S.C. § 77l and 28 U.S.C. § 1391, as substantial part of the actions and events giving rise to this action in the State of Colorado.

8. This Complaint is not a collusive action to confer jurisdiction that the Court would otherwise lack.

## INTRODUCTION

**9.** This action is being brought as a result of the Defendants wrongful actions against the Plaintiff so as to take property, (Exhibit "A" & "B"), without having to complete payments, including the intentional, knowing, and deliberate actions of theft, conspiracy to defraud, and breach of contract against the Plaintiffs. Such wrongful, tortuous actions by the Defendants have left them owing, at a minimum, $125,000, plus the costs of shipping and handling logistics from Minnesota back to Colorado, estimated at $35,000, not including any legal fees or costs, plus the fees and expenses incurred by Plaintiff due to Plaintiffs failure or refusal to properly gather all remaining materials off of the landlords property site for which DB was occupying.

10. When looking at the chain of events, Defendants embarked on a pre-planned and calculated scheme to defraud Plaintiff by leveraging a friendship and intentionally pushing back and reducing payments under false pretenses. Defendants now are left with nothing but a bag full of empty promises, continued excuses and the game of "blaming others" for what is the Defendants own faults and shortcomings.

## GENERAL ALLEGATIONS

**11.** Plaintiff readopts and reaffirms the allegations set forth herein above, specifically within paragraphs 1 – 10.

**12.** In early to mid-July 2019, the Plaintiff and Defendants agreed on terms and conditions as to Plaintiff selling various farming equipment to Defendants for Defendants' farming operations. (See, Exhibit "A", attached hereto and incorporated herein).

13. On July 29, 2019, the Plaintiff solidified the agreed upon terms and conditions of Exhibit "A", by way of the creation of an invoice (Exhibit "A"), which was agreed to the same day by Defendant Brayer, and then by course of conduct, on the Defendants part, in furtherance of the exhibit's agreed to content.

14. Exhibit "A", states that various farming equipment would be sold to Defendants for the amount of $275,000. Prior to the drafting of Exhibit "A", which the Defendant failed to tender a mutual, executed copy thereof, in spite of informing Mr. Brand that one so exists; the Parties orally agreed on a more realistic purchase amount of $375,000, unless the terms of Exhibit "A" were agreed upon and satisfied. These "terms" were: $100,000 down with balance to be paid within 4 weeks of delivery. Buyer responsible for shipping and handling, including price of logistics, labor and off-loading. Pick Up location: 2754 E. Hwy 402, Loveland. CO. 80537 (which is Plaintiff's farming address) and delivered to a site location Defendants selected in Mankato, MN.

15. At no time hereto did the Defendants timely make the deposit transfer and in fact, subsequent to Exhibit "A" being agreed upon, Defendant tried to stall any payment to after Defendants hemp harvest – months in the future. There was a lot of excuses, and due to the positive relations between the parties, the Plaintiff permitted the excuses to continue while politely pressing for the monies owed.

16. At all times material hereto, the Defendant inspected the items set forth within Exhibit "A". Defendant on at least two occasions sent their representative Shaun Crawford to the DB Colorado location to engage and fulfill a pre-site inspection and agreement of the goods to be purchased and received.

17. At all times material hereto Mr. Crawford and Mr. Brayer informed DB that they were very satisfied in both value and property with what they are purchasing and would be timely and properly wiring said monies.

18. At all times material hereto, the Defendants failed or refused to handle, properly arrange, and properly coordinate their shipping, handling and logistics. This refusal or failure created a huge breach for the Plaintiff as the Plaintiff had to evacuate the leased property, given the termination of the lease, and had an agreement in place with the landlord. Due to the relationship between the parties, the Defendant Brayer knew that Plaintiff was dealing with an impending timeline and used this knowledge and leverage to his advantage.

19. As a direct and proximate result of the Defendants failure or refusal to handle their own shipping, handling and logistics, the Plaintiff was forced to handle that matter for the Defendants and do so at a tremendous cost and disruption to Plaintiff; ultimately costing the Plaintiff more damages and costs than anticipated and for which the Defendants have failed to reimburse Plaintiff.

20. Nonetheless, the subject items arrived at the location selected by the Defendants in the State of Minnesota on or about mid-July 2019 and spanning several days thereafter. Upon and after the arrival of the subject items, Defendant Brayer was singing nothing but happiness and praises as to the subject property and the shape and condition it was all in, in spite of having put no sweat into getting the equipment to Minnesota and placing all of the burden on the Plaintiff - last minute.

21. The Parties met at the Mankato, MN location upon the trucks' arrivals and made sure everything was proper and well. Defendants accepted and were happy with everything sent and now in Mankato, MN., out of the possession and control of Plaintiff.

22. Upon returning from Mankato, MN, Craig Brand, Managing Member of the Plaintiff did a walk through, site inspection of the leased property from which the subject items were shipped from. The logistic company was supposed to take everything but could not and the Defendant Brayer and his representative Shaun Crawford were made aware of that. Shaun was told by Brayer to go to Colorado, rent some trucks and bring back the remainder. Mr. Brand immediately reported back to Mr. Brayer and Mr. Garcon, that Defendants agriculture manager, Shaun Crawford, did not take or was unable to take all of the stated items when he arrived on the farm. These items were abandoned by the Defendants and given the end of the lease, also out of the possession and control of the Plaintiff.

23. Mr. Brand informed the Defendants that certain side pieces were left at the farm, belonging to the grow house, also furniture, lighting, electronics, fans, poly-tenting, and pots were all left. Mr. Brayer and Mr. Crawford then told Mr. Brand that Mr. Crawford and his brother only rented one truck and fit in what they could and left the remainder. The Plaintiff was charged an additional clean up and disposal fee by the property landlord in an amount approximating $18,000.

24. After more time went by, and the persistence of Mr. Brand, on or about August 14, 2019, the Defendant Spectrums EU finally paid the amount of 149,970, to Plaintiff, however, this amount also included $3,500 in labor and certain logistical expenses.

25. As per Exhibit "A", 4 weeks after delivery Plaintiff was to be paid off. To date, Plaintiff has not been paid off. The terms and conditions of the oral agreement pre-dating Exhibit "A" are to be in effect thus making the purchase price $375,000 and not $275,000.

26. **BACKGROUND INFORMATION LEADING UP TO EXHIBIT "A"**

   A. At all times material hereto, the Plaintiff wanted a minimum of $375,000 for the products to be purchased by Defendants and contained on Exhibit's "A" & "B").

   B. Defendant Brayer used his personal relations with Craig Brand and a promise for rapid payment, in order to leverage a less expensive price.

   C. Brayer first agreed to the higher price of $375,000 but only if Plaintiff would wait until after the Defendants completed their hemp harvest in the State of Minnesota. This would have required the Plaintiff to wait until October 2019 to receive any payment.

   D. Plaintiff, not a bank and not wanting to wait months for a harvest or have their payment conditioned upon anything, respectfully declined. As a result, Defendant Brayer negotiated down the price by $100,000 on the promise that the terms set forth within Exhibit "A" would be honored.

   E. Plaintiff now believes that the Defendant Brayer's negotiations and agreement were disingenuous, and that Defendant did and said what he had to in order to make himself the best deal possible knowing that he was going to stretch out the payments regardless of what agreement with Plaintiff he entered into.

   F. It is only because the Defendants promised and assured the terms of Exhibit "A" to be honored and fulfilled that Exhibit "A" was created and entered into, otherwise, Plaintiff would have made maintained the $375,000 price, or made other arrangements for the subject items/property, keeping them in the State of Colorado and selling them off or using them at a later date.

27. At all times not only did the Defendants not make one timely payment but in spite of their harvest being completed and successful, Defendants still have failed to make the promised

Case 1:19-cv-03386 Document 1 Filed 12/02/19 USDC Colorado Page 9 of 16

payments and have breached every document and promise agreed to. It is believed that the creation of the documents to be mutually signed were nothing but rouses on the part of the Defendants in order to simply gain more time in a disingenuous way. These breaches coming after the agreements were first negotiated, agreed upon, and due to the partys' relations – subsequently reconfirmed in person as the Parties met and ratified the terms as well as Defendants providing further assurances of compliance.

28. Additionally, the pattern of not paying suppliers and creditors appears to be repeat with not just the Plaintiff. Plaintiff knows of other suppliers and laborers who performed work for the Defendants in Minnesota for Defendants hemp harvest and in spite of the terms being agreed upon, Defendants continued to wrongfully stagger wages and/or payment(s) beyond due dates, stretch out reimbursements, and inform due and owing third parties that they had to wait until harvest or payment out of the harvest to get paid. As such, it would appear a pattern of wrongful actions of mis-leading creditors and/or entering into payment terms with third parties with no intention on fulfilling or timely fulfilling the agreed upon conditions. Such deceit and dishonesty or leveraging payments for additional, non-agreed to extra time is fraudulent and done with malice intent in order for the Defendants to get what they wanted, when they wanted it, and at the expense of the creditor(s) such as the Plaintiff herein.

29. Even after the Defendants successful harvest, the Defendants still would not pay, have not paid, have not presented one reason for not doing so, have not conformed to any of the agreements (exhibits herein) negotiated and agreed upon, and have demonstrated their true wrongful intent and malice.

9

30.     Plaintiffs managing member had to plead to Defendants long-time friend, who resides in the state of Florida, ("AB"), to interject on Plaintiffs behalf and help the parties avoid expensive litigation.

31.     Defendants long term friend, ("AB"), did interject on the parties behalf after reviewing and being familiar with the matter and circumstances. AB simply asked of Plaintiff that his friend Brayer wanted a new invoice made out not to Spectrums EU but to CB2O, LLC. It was explained that Spectrums EU would have an easier time, given the common ownership, to wire transfer the monies to CB2O and then CB2O would send the monies to Plaintiff. AB also asked that Plaintiff draft a mutual release and set the payment terms.

32.     Plaintiff knew that AB was really attempting to buy additional time as the excuses were still just that; however, Plaintiff also knew that a week or two would still be faster than a lawsuit. Thus, plaintiff complied with AB and his client's request.

33.     Plaintiff, after some back n forth with AB, who is also a Florida attorney and has represented the Defendants in the past, emailed draft mutual releases until an agreement was entered and AB notified Plaintiff by email/text that the Mutual Release, as drafted, was accepted and that Plaintiff would sign and comply. (See, a copy of the new Invoice attached hereto as Exhibit "B" and a copy of the agreed upon Mutual Release attached hereto as Exhibit "C").

34.     As a direct and proximate result of the agreement, *supra*, No. 33, above, Defendants wire transferred the first installment payments, as per the written agreement. AB subsequently emailed Plaintiff that the Defendants have shown their good-faith compliance with Exhibit "C" by sending the wire. AB also sent Plaintiff a message that Exhibit "C" was fine.

35.     As set forth in Exhibit "C" a second installment was due and owing November 15, 2019. This date has been subsequently acknowledged by AB and even AB believed that his clients

would have sent the wire by such a time. November 15th came and went and when the Plaintiff inquired to AB, AB still cannot explain why the wire didn't occur as supposed to.

36. Since this time, *supra*, Plaintiff has not heard from AB or the Defendants regarding the payment or any reason, whatsoever, as to why the promised payment didn't arrive.

## CLAIMS

### FIRST CLAIM FOR RELIEF
**(Enforcement of Oral Agreement Against Spectrums USA, Christophe Brayer and CB2O And the Defendants' Breaches Thereof)**

37. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

38. At all times material hereto Exhibits A, B and C were agreed upon, mutually drafted and actions taken in furtherance by both parties to comply with the terms and conditions of these Exhibits.

39. At all times material hereto, Plaintiff executed each of the exhibits and while it appears that the Defendants did not return a signed copy, Defendants not only verbally informed Craig Brand that the exhibits were executed, but the Defendants acted upon each of these exhibits as if signed. Exhibit "C" even has an email confirmation from Defendants personal counsel that Exhibits "B" and "C" were good as agreed upon and then was surprised to learn that Defendants did not follow through on the second payment pursuant thereto.

40. At all times material hereto, at a minimum Oral Agreements were entered by and between the parties.

41. At all times material hereto, the terms and conditions of these Oral Agreements were stated, agreed upon and acted in furtherance thereof.

42. At all times material hereto, the Defendants are in breach of these agreements.

43. As a direct and proximate result of the Defendants breaches, the Plaintiff has been damaged.

44. All conditions precedent to this claim have been complied with.

WHEREFORE, the Plaintiff prays that this Honorable Court grants judgment against the Defendants Spectrums USA/Christophe Brayer, and CB2O, award damages, fees and costs, interest at the maximum amount permitted by law and any and all other relief deemed just and proper including but not limited to the logistic and shipping costs to have the subject property returned to Plaintiff in Colorado.

## SECOND CLAIM FOR RELIEF
## (UNJUST ENRICHMENT-PLEADED IN THE ALTERNATIVE)

45. Plaintiff realleges paragraphs 1 through 36 of this Complaint and incorporates them herein as if fully set out.

46. To the extent that the above-described Oral Agreement, supra, between Plaintiff and Defendants is found to be unenforceable, Plaintiff alleges that by delivering possession of the above-described Personal Property to the Defendants, DB has conferred a benefit upon the Defendants of a fair market value of the Personal Property well in excess of Three Hundred Seventy-Five Thousand Dollars ($375,000.00), and the Defendants received and accepted the benefits conferred by Plaintiff.

47. Although Defendants have tendered a portion of the amounts due to Plaintiff, which Plaintiff has credited against the fair market value of the Personal Property, it is unjust for Defendants to retain the Personal Property without paying compensation to the Plaintiff of the full fair market value of the Personal Property as of the date of tender.

48. Further, it would be unjust for Defendant to retain, without paying Plaintiff the commensurate value, the benefit of Plaintiff's having to incur labor costs and clean up fees to the landlord as a direct result of the Defendants failing to properly and timely handle the shipping arrangements for the subject property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, **Double Barrel Realty Investments, LLC,** a Colorado Limited Liability Company, prays that this Court will either award Plaintiff its damages for Defendants, **CHRISTOPHE BRAYER**, **individually and d/b/a SPECTRUMS USA**, and **CB20, LLC**, a Delaware Limited Liability Company, jointly and severally, its damages for breach of the Oral Agreement in excess of One Hundred Forty Thousand Dollars ($140,000.00), or an amount to be determined at time of trial, plus prejudgment or, alternatively, will award Plaintiff its damages against the Defendants, jointly and severally, commensurate with the uncompensated benefit conferred on the Defendants in a sum in excess of One Hundred Forty Thousand Dollars ($140,000.00) to the Plaintiff or an amount to be proven at time of trial, including the costs of returning the subject property to Colorado from Minnesota. Plaintiff further prays for an award of its costs in this action against the Defendants.

## THIRD CLAIM FOR RELIEF
### (Common Law Fraud Against All Defendants)

49. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein, specifically paragraphs 1-36.

50. Defendants made or caused to be made false representations of material facts and/or failed to disclose material facts to Plaintiffs, as set out with particularity in the foregoing paragraphs, including paragraphs 1 through 36.

51. At the time of the Defendants representations and/or omissions, Defendants knew that the representations were false and that the Plaintiff would reasonably rely upon them to Plaintiff's detriment.

52. Defendants made the representations with the intent that Plaintiffs would rely on the representations and/or omissions, and in fact Plaintiffs did reasonably rely on the representations and/or omissions in reducing the price and/or value of the goods sold and entering into the Exhibits attached hereto all the while tendering and delivering the subject property to Defendants possession in the State of Minnesota without complete payment.

53. Plaintiffs reliance was reasonable and justified.

54. Worse and callous, was the intentional and deliberate use by Defendant Brayer to leverage his friendship with Mr. Brand in order to defraud and deceive Plaintiff.

55. Plaintiffs reliance upon Defendants' false statements and omissions of material facts caused Plaintiffs damages.

56. Plaintiffs have suffered damages in the amount of at least One Hundred Forty Thousand Dollars ($140,000.00) as a result of their reliance on the Defendants' false and misleading statements and omissions. Those false and misleading statements and omissions induced Plaintiffs to sell Defendants the subject goods which they would not have otherwise made, in whole or in part, because the misrepresentations and omissions materially altered and/or concealed the true risks and malicious intent of Defendants. <u>Plaintiffs reserve the right to plead for punitive damages against each and all of the Defendants as a direct and proximate result of their fraudulent activity</u>.

WHEREFORE, Plaintiff, **Double Barrel Realty Investments, LLC,** a Colorado Limited Liability Company, prays that this Court will either award Plaintiff its damages for Defendants, **CHRISTOPHE BRAYER**, **individually and d/b/a SPECTRUMS USA**, and **CB20, LLC**, a

Delaware Limited Liability Company, jointly and severally, or an amount to be determined at time of trial, plus prejudgment or, alternatively, will award Plaintiff its damages against the Defendants, jointly and severally, commensurate with the uncompensated benefit conferred on the Defendants in a sum in excess of One Hundred Forty Thousand Dollars ($140,000.00) to the Plaintiff or an amount to be proven at time of trial, including the costs of returning the subject property to Colorado from Minnesota.  Plaintiff further prays for an award of its costs and attorney fees in this action against the Defendants as well as reserves the right to plead punitive damages.

**FIFTH CLAIM FOR RELIEF**
**(Civil Theft – Colorado Revised Statutes)**
**(Direct Claim Against Spectrum USA, Christophe Breyer and CB2O)**

57.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

58.     Pursuant to Colorado Revised Statutes, section 18-4-401(1), "[a] person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; or receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and: (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; [or] (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit."

59.     Defendants Spectrums USA, Brayer and CB2O has committed civil theft.

60.     Defendants knowingly obtained, retained, or exercised control over a thing of value, to wit, those property set forth within Exhibits "A" & "B", attached hereto, belonging to Plaintiffs or by deception, all of which Plaintiffs demanded to be returned and/or payment made.

61. Defendants knowingly obtained, retained, or exercised control over this subject property with the intent to deprive Plaintiffs permanently of the use or benefit.

62. As Spectrums USA is not a true entity but an alter ego of Christophe Brayer, Mr. Brayer is personally liable for the actions of his alter ego, Spectrums USA.

63. Defendants refusal to return the subject property to Plaintiff, in Colorado, in the same condition as provided, belonging to Plaintiffs or even respond to the Plaintiff's demand is evidence of Defendants specific intent to permanently deprive Plaintiffs of these things.

64. Plaintiffs have been injured for actual and consequential damages as a result of Defendants civil theft of Plaintiff's personal property in an amount approximating the sum of $140,000/, and Plaintiffs are entitled to treble damages, costs of suit, and a reasonable attorney's fee pursuant to Colorado Revised Statutes, section 18-4-405; thus placing the damages in excess of $320,000.

**PRAYER FOR RELIEF**

WHEREFORE, for the reasons alleged herein, Plaintiff prays for this Court to enter judgment against the Defendants and in favor of Plaintiff for all damages incurred by Plaintiff, including treble or other statutory damages, costs, expenses, attorneys' fees, pre-judgment and post-judgment interest as provided by Colorado and/or Federal law, and such further relief to which it may be entitled.

DATED this 2nd day of December, 2019.

S/ *CRAIG A. BRAND*

_____

**Craig A. Brand, Esq.**
Mystic Law P.A.
6411 S. Jamaica Circle
Englewood, Colorado 80111
Telephone: (305) 878-1477
E-mail: Craig@ganjalaw.com
Attorney for Plaintiffs